# Illinois Official Reports

## Appellate Court

---

*Rahic v. Satellite Air-Land Motor Service, Inc.*,
2014 IL App (1st) 132899

---

| | |
|---|---|
| Appellate Court Caption | HIMZO RAHIC, Plaintiff-Appellant, v. SATELLITE AIR-LAND MOTOR SERVICE, INC., ROBERT KRUSE, Individually and as Agent of Satellite Air-Land Motor Services, Inc., and COUSIN PROPERTIES, LLC, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-13-2899 |
| Filed | December 30, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-6670; the Hon. Michael Panter and the Hon. William E. Gomolinski, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David A. Novoselsky and Jonathon P. Novoselsky, both of Novoselsky Law Offices, of Chicago, for appellant.<br><br>Jason Orleans and Bradley A. Bertkau, both of Chilton Yambert Porter LLP, of Waukegan, for appellees. |

JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Mason concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff, Himzo Rahic, a truck driver, suffered a serious head injury while picking up a load of freight from defendant, Satellite Air-Land Motor Service, Inc., but has no memory of the incident. Robert Kruse, the Satellite employee who loaded Rahic's truck and was the only person with Rahic immediately before he was injured, claims ignorance regarding how the injury occurred. Rahic sued Satellite, Kruse, and Cousin Properties, LLC, the owner of the property where the injury occurred, on negligence, premises liability, and spoliation of evidence. The trial court granted summary judgment in favor of Satellite and Kruse on Rahic's negligence claim, finding that because the cause of Rahic's injury remained a matter of speculation, Rahic failed to produce a genuine issue of material fact on causation. Rahic amended his complaint and again raised a negligence claim against Satellite and Kruse and added a new claim against both parties under the doctrine of *res ipsa loquitur*. The trial court granted Satellite and Kruse's motion to dismiss the negligence and *res ipsa loquitur* claims on *res judicata* grounds and denied Rahic's motion to reconsider.

¶ 2        Rahic argues the trial court erred in granting summary judgment on his negligence claims. He contends that despite no direct evidence as to how his injury happened, the circumstantial evidence created a genuine issue of material fact for the jury to decide whether Satellite and Kruse caused his injuries. Rahic also contends the trial court erred in dismissing his negligence and *res ipsa loquitur* claims on *res judicata* grounds because the summary judgment order was not a final order and *res ipsa loquitur* constitutes a separate and distinct claim from ordinary negligence.

¶ 3        We affirm. Nothing in the record indicates how Rahic injured his head, and, accordingly, he is unable to show that defendants were the cause and thus unable to make a claim for negligence. And *res ipsa loquitur* cannot be invoked here in light of the absence of any evidence that the injury resulted from an instrumentality under defendants' control or that defendants failed to exercise ordinary care.

¶ 4                                    BACKGROUND

¶ 5        On April 8, 2009, Rahic, an owner-operator truck driver for R&M Trucking, drove to R&M Trucking's office in Bensenville, Illinois, to pick up his tractor-trailer and get his assignment. Rahic was dispatched to Joliet and then to Schaumburg, Illinois, before returning to Joliet for an empty 20-foot shipping container which needed to be taken to Satellite's facility in Wood Dale, Illinois. Arriving at about 1:30 p.m., Rahic parked his truck in the Satellite lot and went inside. After giving a Satellite employee the pickup number, Rahic was instructed to park in dock five. Rahic opened the rear doors of his container and backed up to the assigned dock. Rahic got out of his truck to make sure he was parked correctly. He then returned to his truck and sat inside talking on the phone to another truck driver, Enes Karic, for about a half

hour. Karic stated that he did not notice anything out of the ordinary about Rahic while they talked. Meanwhile, Robert Kruse, a Satellite employee, loaded the container.

¶ 6 The container loaded, Rahic signed some papers and, at Kruse's request, moved his truck forward about five feet so the container doors could be closed. Rahic then got out of his truck and walked toward the back with Kruse to close the doors. While he was at the back of his truck, Rahic injured his head, but does not remember how. In his deposition, which was taken with the assistance of an interpreter, Rahic initially said Kruse helped him close the back left door of the container. Later, however, Rahic said "I don't know if [Kruse] was helping me with something, but I had an accident." Rahic also said "I don't know what [Kruse] was trying to help me with. I only know that something hit me." And, "I don't know what hit me." Rahic then got back in his truck and called his friend Enes Karic and told him he had pain in his head. Karic sent a friend, Elez Salihbegovic, to Satellite to check on Karic. Salihbegovic noticed that Rahic was holding his head, was pale, and had a lump on his head but he did not see any blood or wounds.

¶ 7 The Satellite employee, Kruse, stated in his deposition that after he loaded the truck, he went to the office to grab some paperwork then went outside to talk to Rahic, who was in the truck. According to Kruse, after Rahic pulled his truck forward a bit, Rahic got out of the truck, walked to the back and closed the doors. Kruse said he did not help Rahic close the doors and did not see him strike his head on the door, fall down, or injure himself in any way. Kruse claimed he was unaware anything was wrong with Rahic until more than an hour later when his boss asked him if Rahic's truck was still parked in dock five. Kruse went outside and saw Rahic's truck had not moved. Kruse said he stood outside for a while but did not approach the truck. Not long after, emergency personnel arrived.

¶ 8 An ambulance transported Rahic to Alexian Brothers Hospital, where Dr. Sysymon Rosenblatt operated and treated him for external blunt force trauma to the head. In his deposition, Dr. Rosenblatt did not express an opinion as to how Rahic sustained the head injury but stated that a fall would likely have resulted in more extensive external bodily injuries. He also stated that Rahic's injuries could be consistent with being struck in the head by a door.

¶ 9 On June 8, 2010, Rahic filed a one-count complaint against Satellite alleging that a Satellite employee negligently closed the container doors on him, causing injuries. On February 14, 2011, Rahic filed the first amended complaint alleging negligence against Satellite (count I) and premises liability against Cousin (count II). Later, Rahic filed a second amended complaint adding Kruse as a defendant, and raising a claim of negligence against Satellite and Kruse, individually and as an agent of Satellite, and premises liability against Cousin. Rahic's third amended complaint, filed on July 20, 2011, alleged negligence against Satellite (count I) and premises liability against Cousin (count III) but did not name Kruse as a defendant. The third amended complaint also for the first time raised spoliation of evidence claims against Satellite and Cousin (counts II and IV). After Cousin filed a motion to dismiss count III of the third amended complaint, the trial court granted Rahic leave to file a fourth amended complaint, which was filed on September 14, 2011. The fourth amended complaint again named Kruse as a defendant and alleged a negligence claim against Satellite and Kruse (count I), a premises liability claim against Cousins (count III), and spoliation of evidence claims against Satellite and Cousins (counts II and IV).

¶ 10 Satellite and Kruse filed a motion for summary judgment on count I of Rahic's fourth amended complaint alleging negligence. Defendants asserted that because Rahic had no

memory of what happened and no witnesses to his injury, he would be unable to establish to a reasonable certainty that any conduct on their part was the proximate cause of his injuries. In his response, Rahic argued that circumstantial evidence and expert opinions raise a material fact as to causation that should be left for a jury to decide, attaching affidavits from Louis F. Draganich, Ph.D, a biomechanical engineer, and Paramjit S. Chopra, M.D., a radiologist. Draganich opined that as Kruse moved the driver's side container door it struck and injured Rahic. Chopra opined that the container door closed on Rahic's head and the injuries were inconsistent with a fall.

¶ 11        On April 25, 2012, the trial court entered an order granting summary judgment on count I in favor of Satellite and Kruse. The trial court acknowledged Draganich's and Chopra's affidavits asserting that Rahic's blunt head trauma was consistent with being hit by the door of his truck and suggested that Rahic may have been hit by the truck container door and that Kruse may have been assisting him at the time. But because Rahic had no memory of what happened, there were no witnesses, and Kruse denied he helped Rahic close the doors, the trial court concluded that whether Kruse, and by extension, Satellite, caused Rahic's injury amounted to mere speculation and not a basis for a negligence claim.

¶ 12        Rahic filed a motion to reconsider the order granting summary judgment as to count I, which the trial court denied after a hearing. The trial court agreed with Rahic that "something happened" behind the truck and that he was injured. The court noted that Rahic's treating physician, Dr. Rosenblatt, stated in his deposition that Rahic had blunt trauma to the head that could have been caused by hitting a door but also could have been caused by a fall. The court also found that none of the evidence Rahic provided, including a videotape of the incident, raised a genuine issue of material fact as to defendants' negligence. In addition to denying Rahic's motion to reconsider, the court entered an order under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), that there was no just reason to delay enforcement or appeal. Plaintiff filed a motion to vacate the Rule 304(a) portion of the order, which the court granted.

¶ 13        On November 16, 2012, with leave from the trial court, Rahic filed a fifth amended complaint again alleging negligence against Satellite and Kruse (count I), spoliation of evidence against Satellite, Kruse, and Cousin (counts II and IV) and adding a *res ipsa loquitur* claim (count III) against Satellite and Kruse. Satellite and Kruse filed a motion to dismiss count III of Rahic's fifth amended complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). The trial court granted the motion under section 2-615, without prejudice, finding that Rahic's complaint failed to state the essential elements of a *res ipsa loquitur* claim. The trial court noted Rahic had filed five amended complaints and gave him one final opportunity to meet the pleading requirements.

¶ 14        Rahic filed his sixth amended complaint on April 29, 2013. Rahic again raised a negligence claim (count I) and alleged a *res ipsa loquitur* claim (count II) against Satellite and Kruse. Rahic also raised claims for spoliation of evidence against Satellite (count III) and Cousin (count IV), alleging that Satellite maintained surveillance cameras at its facility but failed to preserve evidence by permitting videotapes from the day of the incident to be erased or taped over. Satellite and Kruse filed a motion to dismiss counts I and II of Rahic's sixth amended complaint under section 2-619.1 (735 ILCS 5/2-619.1 (West 2012)). Defendants asserted that count I, the negligence claim, should be dismissed under section 2-615 because relief cannot be granted where the trial court already issued a summary judgment on Rahic's negligence claims. Further, they contended dismissal of count I was warranted under section 2-619(9)

because "other affirmative matter," namely, the summary judgment order, barred the negligence claim. Defendants asserted the court granted Rahic leave for the limited purpose of repleading the *res ipsa loquitur* count but Rahic did not have leave to replead the negligence counts on which summary judgment was granted. Defendants argued *res ipsa loquitur* (count II), a negligence claim, was barred under *res judicata*, because summary judgment had been granted on Rahic's negligence allegations.

¶ 15    On August 12, 2013, the trial court entered an order granting defendants' motion to dismiss counts I and II of the sixth amended complaint with prejudice under sections 2-619(a)(4) and (a)(9) of the Code. 735 ILCS 5/2-619(a)(4), (9) (West 2012). An agreed order, entered on August 30, 2013, provided the required Illinois Supreme Court Rule 304(a) language on (i) the trial court's August 12, 2013 order dismissing counts I and II of the sixth amended complaint, (ii) the trial court's order granting Satellite and Kruse's motion for summary judgment as to count I of the fourth amended complaint, and (iii) the trial court's order denying Rahic's motion for reconsideration of the April 25, 2012 order. On September 9, 2013, Rahic filed a timely notice of appeal of the summary judgment order as to count I of his fourth amended complaint and the dismissal of counts I and II of his sixth amended complaint. The spoliation claims against defendants remain pending and are not before the court.

¶ 16                                         ANALYSIS
¶ 17                        Summary Judgment on Negligence Claim
¶ 18    Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, show an absence of any genuine issue of material fact and entitlement to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). In determining whether a genuine issue of material fact exists, the trial court strictly construes the pleadings, depositions, admissions, and affidavits against the movant and liberally in favor of the opponent. *Adames v. Sheahan*, 233 Ill. 2d 276, 295-96 (2009). A plaintiff is not required to prove his or her case at the summary judgment stage; however, to survive a motion for summary judgment, the nonmoving party must present probative evidence that supports his or her position. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). "Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). We review *de novo* an order granting summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 19    Rahic contends the trial court erred in granting summary judgment in favor of Satellite and Kruse as to count I of his fourth amended complaint alleging negligence. In pleading negligence, the plaintiff must allege facts showing the defendant: (1) owed him or her a duty of due care; (2) breached that duty; and (3) that this breach was the proximate cause of his or her injuries. *Wilfong v. L.J. Dodd Construction*, 401 Ill. App. 3d 1044, 1051 (2010). Generally, proximate cause is an issue of material fact to be determined by the trier of fact. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004). But proximate cause may be determined as a matter of law where the facts show that the plaintiff would never be entitled to recover. *Id*. at 257-58. Proximate cause consists of two requirements: cause in fact and legal cause. *Id*. at 258. For a defendant's conduct to be a "cause in fact" of the plaintiff's injury, the conduct must constitute "a material element and a substantial factor in bringing about the injury." *Id.* If the plaintiff's

injury would not have occurred absent the defendant's conduct, then the conduct forms a material element and substantial factor in bringing about the injury. *Id.* On the other hand, "legal cause" involves an assessment of foreseeability and the court must consider whether the injury is of the type that a reasonable person would see as a likely result of his or her conduct. *Id.*

¶ 20     To establish proximate cause, the plaintiff bears the burden of "affirmatively and positively show[ing]" that the defendant's alleged negligence caused the injuries for which the plaintiff seeks to recover. (Internal quotation marks omitted.) *Bermudez v. Martinez Trucking*, 343 Ill. App. 3d 25, 29 (2003). Liability against a defendant cannot be predicated on speculation, surmise, or conjecture. *Mann v. Producer's Chemical Co.*, 356 Ill. App. 3d 967, 974 (2005). Thus, the plaintiff must establish with "reasonable certainty" that the defendant's acts or omissions caused the injury. *Id.*

¶ 21     The plaintiff may establish proximate cause through circumstantial evidence. *Mann*, 356 Ill. App. 3d at 974. That is, causation may be established by facts and circumstances which, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury. *Id.* It is not necessary that only one conclusion follow from the evidence. *Id.* But a fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 795 (1999). Indeed, where the proven facts demonstrate that the nonexistence of the fact to be inferred appears to be just as probable as its existence, no inference may be made. *Mann*, 356 Ill. App. 3d at 974.

¶ 22     Rahic concedes he has no memory of how he injured his head but contends that circumstantial evidence, namely, that he was at Satellite's facility and only he and Kruse were present when he was injured, alone establishes a genuine issue of material fact regarding causation. For support, Rahic relies on *Mort v. Walter*, 98 Ill. 2d 391 (1983). In *Mort*, a father testified that he did not hear a car approach as he collected mail on the side of the road with his back toward the plaintiff, his four-year-old son, who was standing on the opposite side of the road. *Id.* at 393. When the father turned around, he saw his son lying on the road and the defendant's car about 50 feet west of the boy. *Id.* The defendant testified she did not see the boy before impact as her attention was focused on the father, who she thought might start to walk across the road. *Id.* at 394. The first indication she had of the boy's presence was when she heard a " 'thump' " at the rear of her car. *Id.* The trial court granted a directed verdict in defendant's favor on plaintiff's negligence complaint and plaintiff appealed to the supreme court after the appellate court affirmed the trial court's decision.

¶ 23     In reversing the directed verdict, the supreme court agreed with the defendant that the existence of the collision, in and of itself, is ordinarily insufficient to raise an inference of negligence. *Id.* at 396. But the court found based on the circumstances that the jury could reasonably conclude the defendant should have been aware of the presence of the young boy standing near the roadway in plain view. *Id.* at 399. The court noted that often "knowledge of hazardous conditions must be imputed to litigants when the danger of one's actions would be apparent through the exercise of 'reasonable precaution and circumspection.' " *Id.* at 397 (quoting *Carter v. Winter*, 32 Ill. 2d 275, 284 (1965)). The court further stated, "[o]ne cannot look with unseeing eye and not see the danger which he could have seen by the proper exercise of his sight, or stated another way, one will be deemed to have observed that which would

necessarily have been seen if he had looked, and will not be absolved of the charge of negligence in failing to look by testimony that he looked and did not see." (Internal quotation marks omitted.) *Id.* at 398. The essential question, the court stated, was "whether the party has failed to do that which a reasonably careful person would do or has done something which a reasonably careful person would not do." *Id.* The court found that "a jury could reasonably conclude that [defendant] should have been aware of the presence of the young child standing in plain view, whose precipitous darting across the highway would appear more likely than similar action by its father, and have reduced her speed or moved to the middle of the road, or both, before driving between them, and that her failure to do so was the proximate cause of plaintiff's injury." *Id.* at 399.

¶ 24    Rahic contends that, as in *Mort*, the trial court should have permitted the jury to decide the issue of causation even if he has no memory or knowledge of how he sustained his injury. *Mort* is distinguishable, however. Although the defendant did not know at the time that she hit the plaintiff and the plaintiff's father did not see his son get hit, there was no doubt that the defendant had indeed hit him with her car. As a result, the trial court was able to conclude that the defendant did not do something she should have done, namely, maintain a proper lookout for a child on the road. That finding was based on her testimony that she was looking at the father and was not looking at the child standing in plain view. Thus, the plaintiff presented sufficient evidence that defendant's negligent conduct may have been the proximate cause of the plaintiff's injuries, a permissible question for a jury to decide.

¶ 25    Conversely, Rahic cannot present evidence of conduct by defendants that may have caused his injuries. As he acknowledges, because he has no memory as to what happened to him, he can only speculate as to what caused his injury. Unlike in *Mort*, defendant Kruse disclaims any involvement or knowledge of how Rahic hurt his head. As the trial court noted, Rahic's injuries may have been caused in any number of ways–he may have fallen, or bumped his head on the door, or he and Kruse may have collided. Unfortunately, the sequence of events resulting in Rahic's injury must rely on pure conjecture. In the absence of even a scintilla of evidence that Kruse and Satellite either did or failed to do something, Rahic has no means to establish negligence on their part as a proximate cause.

¶ 26    Rahic also relies on *Mann v. Producer's Chemical Co.*, 356 Ill. App. 3d 967 (2005), which tends to support the trial court's order granting summary judgment rather than Rahic's argument. In *Mann*, plaintiff, the decedent's mother, claimed that defendant, a truck driver, was negligent when he waved the decedent across a street, allegedly indicating to decedent it was safe to cross. *Id.* at 969. After decedent cleared the front of defendant's truck, a vehicle passing the truck on the right struck and killed him. *Id.* The trial court granted summary judgment for the truck driver, finding he was not the proximate cause of the accident. *Id.* The court noted that although one witness claimed to have seen the truck driver wave at the decedent, the record lacked any direct evidence indicating that the decedent saw him wave or relied on the wave in crossing the street. *Id.* at 975. This was important because the decedent had started to cross the street before the alleged wave and was continuing to cross regardless of being waved across. *Id.* at 969-70.

¶ 27    The case turned on whether circumstantial evidence that defendant's wave caused the decedent to get hit sufficed in the absence of direct evidence of causation. *Id.* at 974. In affirming, the appellate court found that decedent's reliance on the alleged wave in crossing the street was just as likely as his nonreliance. *Id.* at 980. The court observed, "a fact is not

'established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only probable, not merely possible, conclusion that can be drawn therefrom.' " *Id*. at 974 (quoting *Wiegman*, 308 Ill. App. 3d at 796). Where, " 'from the proven facts[,] the nonexistence of the fact to be inferred [is] just as probable as its existence, then the conclusion that it exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be allowed to draw it.' " *Id.* (quoting *Wiegman*, 308 Ill. App. 3d at 795-96).

¶ 28   Similarly, as to the cause of Rahic's injury, it is based on nothing other than mere speculation, surmise, guesswork, or conjecture, none a substitute for direct or circumstantial evidence. As to what happened, notably there is not merely an absence of conflicting evidence but an absence of any evidence. It is as likely Rahic hit his head or fell down as it is that defendants did something to cause the injury. Although defendants maintained a video surveillance system that could have shed light on how Rahic sustained his injuries, it appears from Rahic's spoliation claims that the duplicate copies defendants provided to plaintiff are distorted and the original footage was erased or taped over. As a result, Rahic's inability to present any eyewitnesses or videotape evidence showing how he was injured or that defendants were in anyway responsible precludes us from finding that there is a question of fact as to whether defendants' actions or inactions caused Rahic's injury. Thus, the trial court did not err in granting summary judgment as to count I of the fourth amended complaint.

¶ 29                          Dismissal of *Res Ipsa Loquitur* Claim

¶ 30   Rahic next contends the trial court erred in dismissing counts I (negligence) and II (*res ipsa loquitur*) of his sixth amended complaint under sections 2-619(a)(4) and (a)(9) of the Code (735 ILCS 5/2-619(a)(4), (9) (West 2012)), arguing the requirements of *res judicata* were not satisfied as to either count. Section 2-619(a)(4) provides for involuntary dismissal of a pleading because "the cause of action is barred by a prior judgment." 735 ILCS 5/2-619(a)(4) (West 2012). Section 2-619(a)(9) permits involuntary dismissal of a pleading where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2012). An appeal from a section 2-619 dismissal raises the issue of whether the circuit court's order is proper as a matter of law and is, therefore, reviewed *de novo*. *Mueller v. North Suburban Clinic*, *Ltd*., 299 Ill. App. 3d 568, 572 (1998). We may affirm the judgment of the circuit court on any basis appearing in the record. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 282 (2006).

¶ 31   First, as to count I of his sixth amended complaint alleging negligence, we again note that the record is devoid of evidence as to the cause of Rahic's injuries. Rahic is unable to establish that defendants breached a duty owed to him and, since the cause of his injuries is a matter of pure speculation and conjecture, he is also unable to show that a breach by defendants was the proximate cause of his injuries. Thus, as a matter of law, Rahic cannot state a claim for negligence, and the trial court did not err in dismissing count I.

¶ 32   Similar reasons warrant dismissing count II of the sixth amended complaint based on a theory of *res ipsa loquitur*. Whether the *res ipsa loquitur* doctrine should apply is a question of law subject to *de novo* review. *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). A plaintiff seeking to rely on *res ipsa loquitur* must show: (1) he or she was injured, (2) the injury was received from an instrumentality that was under the defendant's control, and (3) in the normal course of events, the injury would not have occurred if the defendant had used ordinary care

while the instrumentality was under his or her control. *Id.* at 531-32. Rahic has failed to make allegations supporting the second and third elements of a *res ipsa loquitur* claim.

¶ 33 Since Rahic has no memory or knowledge as to how he sustained his injury, it is impossible to find the injury was received from an instrumentality under defendants' control or that it would not have occurred in the normal course of events if the defendants had used ordinary care. This complete absence of any direct evidence of negligence on defendants' part is determinative. See *Dyback v. Weber*, 114 Ill. 2d 232, 242-43 (1986) (*res ipsa loquitur* did not apply where homeowner failed to show fire which destroyed her home ordinarily would not have occurred in absence of negligence by construction company); *Napoli v. Hinsdale Hospital*, 213 Ill. App. 3d 382, 388 (1991) (holding that where there are differing possible causes of an accident and a plaintiff cannot establish that defendant's actions caused it, *res ipsa loquitur* is not applicable). As the trial court observed, maybe Rahic bumped his head or the door swung open faster than he expected or he and Kruse collided or "any number of other possibilities." It is a sad twist of fate that the injury that deprived Rahic of his memory of the events that day occurred in a manner that also deprives him of a claim on *res ipsa loquitur* grounds. Nothing in the evidence suggests defendants' negligence as the most plausible explanation for the plaintiff's injury; conjecture alone does not suffice. In the absence of any evidence that the injury resulted from an instrumentality under defendants' control or that defendants failed to exercise ordinary care, *res ipsa loquitur* cannot be invoked.

¶ 34 CONCLUSION

¶ 35 We affirm the trial court orders granting summary judgment on Rahic's negligence claim of his fourth amended complaint and dismissing his negligence and *res ipsa loquitur* claims of his sixth amended complaint.

¶ 36 Affirmed.